I don't know where it's going, but we've had this equipment. We're going to test it out so that the court will be adopting some rule on use of video arguments for the court. I don't think it's going to be for the lawyers, but it may be under certain circumstances for the court. This is our beta test to see how it works, and Judge Bright has volunteered to prepare and be present for this case. He is a very active member on the court. That's what we're doing today, and we thank you for being part of it. With that, Professor Wallace, we're ready to hear from you again. May I say something, Chief? Yes, sir. I just wanted to say thanks for arranging this. I send greetings from 950 miles away in Fargo, North Dakota. I think this is an important event, particularly for people like myself who have trouble in our older age traveling. This is an opportunity for me to participate in the court without having to travel to St. Louis. I'm very happy to be here, and on with the show, as they say. Thank you again, Judge Bright, for volunteering and being part of this. Okay, Professor Wallace, you may proceed. May it please the court, my name is Greg Wallace, and I represent Candy Klein in this Social Security Disability Appeal. Ms. Klein is a 44-year-old woman who is unable to work due to fibromyalgia and degenerative arthritis. Now, the ALJ found that Ms. Klein can perform the full range of light work, and he found her not disabled on the ground that she, with that RFC, can return to her past relevant work. The ALJ's RFC finding here is inconsistent with the opinion of Ms. Klein's treating doctor, Dr. Allen, so the issue is whether the ALJ properly discounted Dr. Allen's opinion. Dr. Allen treated Ms. Klein from November of 2008 through March of 2010. In March 2010, he completed a medical source statement in which he stated that Ms. Klein could lift up to only 10 pounds, can sit for a total of 3 hours a day, and can stand and walk for a total of 3 hours a day. When Ms. Klein's attorney presented the VE with a hypothetical that included these limitations found by Dr. Allen, the VE testified that there would be no jobs in the economy that a person so restricted could perform. Mr. Walts, I want to ask you this question. The ALJ discounted Dr. Allen, but the ALJ is supported, as I see, by Dr. Crow, who issued a report in March of 2010. Did Dr. Crow actually examine the patient? No, I think he was a state agency doctor who only reviewed Ms. Klein's records up to that time. So if I get it, the issue is you have Dr. Allen who took care of Ms. Klein for over a year, from late 2008 to March 2010, and said she is in effect disabled from his observation in his report. On the other hand, you have this other doctor who was hired by the administration, never sees the patient, and opines from never seeing the patient that she is fully capable of doing such things as lifting, for example, up to 50 pounds. And that's the problem in this case, correct? Yes, sir. That is the problem because the ALJ really has no other evidence in this case that supports his opinion or his finding that Ms. Klein can perform light work. Two other doctors who did treat or examine Ms. Klein actually found Ms. Klein to be more restricted than Dr. Allen. Dr. Knott, who performed a consultative evaluation in August of 2007, he opined that Ms. Klein can only stand and walk two hours a day, which is one hour less than what Dr. Allen said. And, of course, such a limitation on standing and walking would preclude the performance of light work because light work requires the person to be able to be on their feet for at least six to eight hours in a normal work day. Dr. McNew, who treated Klein in 2009 for degenerative arthritis and fibromyalgia, also recommended that she seek disability. So both of these doctors' opinions support Dr. Allen's opinion. Now, there are other doctors, other treating doctors in the record. They didn't comment on Ms. Klein's work-related restrictions, but nothing that they have in their reports or treatment notes is inconsistent with Dr. Allen's opinion. For example, Dr. Cagle treated Ms. Klein from 2006 to 2008. He diagnosed her as suffering from degenerative arthritis of the lumbar spine. Counsel, when you go back that far, you have a situation where she was turned down for her application. So we're not in 2007. We're now in 2010 and really up to date. One of the big questions I have is the ALJ said Dr. Allen's observations and reports are when she found this lady disabled were inconsistent with his treatment notes. Now, I looked over. Is there anything inconsistent that you know of in Dr. Allen's reports that's inconsistent with his evaluation? Not directly inconsistent. I think what the ALJ apparently was referring to, and maybe not, but maybe he was, was the sparseness of Dr. Allen's treatment notes. There really is not a lot there. Of course, these doctors, when they treat patients, as this court has recognized, don't fill out their treatment notes anticipating a Social Security disability claim. But it's our contention that, and to answer Judge Bright's question, no, there's nothing that is overtly or directly inconsistent. Professor Wallace, the ALJ and the district court, and I'm just looking at my notes here, talked about the two unremarkable MRIs. They had occurred one a few months after and one maybe a year later from a positive CT scan, which found a slight or small bulge. But the MRIs were unremarkable, and then talked about that there was no restriction on the range of motion or mobility, any mobility limitations, any muscle weakness, no muscle atrophy, absence of the doctor-imposed restrictions, conservative treatment, and deceptive behavior by the plaintiff. Those were all the items that threw up there. So what is your response to those items? Well, first of all, it's not clear that fibromyalgia would not be shown on a CT scan or an MRI. Those deal with discs. There was one positive CT scan, as you mentioned, and I think Dr. Allen was entitled to rely on that, as he did. CT scans and MRIs are not foolproof, and if they come back negative, unremarkable, that doesn't necessarily mean that nothing is there. On the other hand, if a CT scan does show something that is there, then that would seem to be a more reliable scan. What did the ALJ make of Dr. Roberts' testimony? Well, Dr. Roberts was her treating rheumatologist in 2011. He found no disease, no joint disease? No, he actually diagnosed her as suffering from back pain typical of fibromyalgia, based on two separate occasions in which he found the trigger points. And this court has said that fibromyalgia is kind of a tricky disease. It doesn't have a lot of objective manifestations. You can't see it on an X-ray or a CT scan. But the presence of these trigger points is something that is diagnostic for fibromyalgia. What do trigger points mean, counsel? What do you mean, trigger points? I did not quite understand that. What are trigger points? She has pain at certain locations on her body, and those locations are typical, are consistent with other persons suffering from the same type of disease. And the doctors have identified, I think, as many as 20, and I think they have to have a certain number, 15 or 16 out of the 20, for it to be diagnostic of fibromyalgia. And Dr. Roberts found that she had these trigger points and, in fact, did diagnose her with fibromyalgia. Now, as to the other factors that you mentioned, Judge Riley, while Dr. Allen's notes don't necessarily record some of those things, I think those gaps are filled in by the treatment notes of the other doctors that treated her. For example, Dr. Knott did find limited range of motion, contrary to the district court's finding there, and Dr. Campbell noted poor range of motion as well. All of these doctors, Dr. Cagle, Dr. McNew, Dr. Roberts, all noted tenderness and multiple areas of tenderness and spasm here. As to conservative treatment, I think the government suggested that you can't really be disabled by back pain unless you have back surgery, but back surgery is not remedial for all types of back ailments. We're not talking about surgery, but it seems to me that the crucial issue is whether or not the ALJ properly discounted Dr. Allen, who saw this woman at least ten times over a year. As I get it, he relies on that the treatment notes are consistent, but don't say anything special. He also goes back to, I think, way back to some psychologist in 2007, who on one occasion said he thought Mrs. Klein was exaggerating, but that was just an opinion. So what you have here, it seems to me, is an opinion by a non-treating doctor, an expert looking over the records, who says this woman can do certain things without any testing, and of course then you have the treating doctor and personal doctor over a long period of time who says she can't do these things, and that's how both conclusions are mere opinions, isn't that right? Yes, they are. Nobody tested whether she could actually lift 50 pounds like they can do in some places. But the treating doctor's opinion, typically under both this circuit's case law and under the regulations, is to be accorded great deference here, and the ALJ didn't really evaluate the treating doctor's opinion here under the factors that the regulations set out. And typically when you have the opinion of a non-examining doctor, that is not to be given precedence over the opinion of a treating doctor, unless there's very good reason for doing so. And here you have two other doctors in the record that would agree with Dr. Allen about Ms. Klein's restrictions. You have three other doctors who treated her who have identified nothing that was inconsistent, and the fact that she hasn't undergone back surgery I don't think is of any account because back surgery is not something that's the appropriate remedy for fibromyalgia pain. Let me ask you this. You know as well as anybody the standard of review, and the standard review is substantial evidence which is probably less than a preponderance evidence. There just has to be some evidence that supports the ALJ here, and you've got to poke holes in that, in what you're doing. But why is there not substantial evidence here? Maybe it's less than 50-50, maybe it's 25%, but why is that not enough in this case? The proper standard review is substantial evidence on the record as a whole, and the record as a whole here supports Dr. Allen's opinion. Sure, there may be a state agency doctor that disagrees, but the record as a whole when you consider Dr. Allen, when you consider Dr. Knott, Dr. McNew, when you consider the other treating doctors, Cagle, Campbell, Roberts, all of these doctors either have said things that support Dr. Allen's opinion or have made findings that are not inconsistent with his opinion. And so the evidence that the ALJ has to rely on here is terribly thin to support the conclusion that she can perform light work. ALJ take into account a patient's noncompliance with physician's directions? Yes, if that noncompliance would restore her ability to work. What's the evidence in this case relative to patient compliance and its impact? I don't think there's a lot of evidence here about noncompliance. I mean, she may not take her medication every now and then. I take about 10 pills myself a day, and sometimes I don't take them because I've run out and I hadn't gotten to the drugstore and things like this, but I don't think that there is any sort of blatant history here of noncompliance. What about the ALJ's finding that she was not totally credible? How does that enter into this? Well, I think her credibility finding, I see my time has expired. May I answer your question? Thank you. I think the credibility finding here depends a lot on the medical evidence, and Dr. Allen's opinion is part of that medical evidence. Now, her daily activities, we didn't raise the credibility issue on appeal because we think that the real key here is Dr. Allen's opinion and the support for that. But we would certainly agree that she's a credible witness based on his opinion and the opinions of the other doctors. Thank you, Your Honor. Thank you. I'll give you a minute and rebuttal, so be prepared. Okay. Good morning, Mr. Clark. May it please the Court. My name is Jonathan Clark, and I represent Acting Commissioner Carolyn W. Colvin in this matter. The issue in this case is whether substantial evidence supports the ALJ's determination to afford little weight to Dr. Henry Allen's March 2010 opinion. And the ALJ, in this case, articulated two specific and valid reasons for affording little weight to this opinion. The first reason is that Dr. Allen's treatment notes do not support the limitations that he found in March 2010. The second reason... Let me interrupt there. You say treatment notes. I looked over. Is there anything other than those printed sheets signed by Dr. Allen, either he signed them or he didn't sign them, that... Are there any other notes other than what's on those forms? To my knowledge, no, Your Honor. Well, I've read every one of those forms, and every one of those forms has the notation of the assessment as back pain. And then all the other notes merely talk about other factors, but the back pain is consistent in ten reports. Now, I'm trying to figure out why the ALJ said that his opinion was not consistent with the treatment notes. I didn't see any inconsistency. Can you point some out to me? Yes, Your Honor. In November 2009, for instance, Dr. Allen actually noted that he was going to reduce Klein's use of narcotic pain medication. And I think notably, Dr. Allen's March 5, 2010 treatment notes, which was dated the same day as his opinion, have no abnormalities. In other words, Dr. Allen didn't find anything wrong. A good example would be that we would expect something along the line of some limitations that Dr. Allen would say, you know, based on your back pain and based on your complaints and my findings, I would limit you to not doing X, Y, or Z. And that's not the case. But on March 10th, the only purpose of that examination was to fill out the papers for the disability. It was not an examination, furthermore, for treatment as much as to fill the papers. So you may be on a little slopey slope there, sloppy slope, if I may say so. All right, but I appreciate your go ahead. I'm sorry to interrupt. And going back to Dr. Allen's opinion itself, the March 2010 opinion, Dr. Allen bases his limitations on diagnosis of osteoarthritis, possible diagnosis of fibromyalgia, and a CT scan showing a disc bulge. But as Klein points out in her reply brief, there are no findings. Dr. Allen has no clinical or diagnostic findings throughout his record mentioning osteoarthritis or fibromyalgia, per se. And furthermore, the CT scan, which was taken in September of 2005, and that's four and a half years prior to Dr. Allen's opinion, shows only a tiny, and that's the word on the examination itself, a tiny single disc bulge. And as has been pointed out, subsequent MRIs show no disc bulge and show only minor or unremarkable conditions. And that goes to the point that Professor Wallace raised about fibromyalgia. I think it's important to point out at this point that, as this court has stated, not every diagnosis of fibromyalgia warrants a finding of disability. Rather, the issue is not a particular diagnosis, but what limitations, if any, come from or result from this impairment. Now, the ALJ in this case found at step two that Klein had fibromyalgia. That's not in question. The issue is what limitations stem from that. And the ALJ discussed fibromyalgia and discussed the limitations from this as well as other severe impairment and found that Klein was limited to a full range of light work. In other words, he credited her, and he realized that she had some impairments that limited her, and he reduced the amount of work that she was able to do. But it's important to point out that, again, that not every diagnosis of fibromyalgia warrants a finding of disability, as did not in this case. Now, going back to the second reason that the ALJ articulated for affording little weight to Dr. Allen's opinion is that the medical record on the whole is not consistent, or rather that Dr. Allen's opinion is inconsistent with the medical record on the whole. As has been pointed out, there have been four other physicians who examined Klein, and they all had findings that would undercut Dr. Allen's opinion. For example, the first physician, Dr. Patricia Knott, found in August of 2007 that Klein could lift 20 pounds occasionally and 10 pounds frequently, and that's consistent with the ALJ's finding that Klein could perform light work. In 2007, she had another claim that was rejected, and no question was raised about that. We're not talking about 2007. We're talking about 2010, not the 2007. Not that that can't be used, but it seems to me that to overrule Dr. Allen on something that old, when he's been seeing this patient for over a year almost every month, is not right. Well, in addition to Dr. Knott, there are actually three more physicians who did examine Klein. The first would be in 2009, June 2009. This is Dr. McNew, and Dr. McNew encouraged, after examining Klein, and noted that Klein had a normal gait. She had a full range of motion strength in her upper extremities and was neurologically intact. Interestingly, importantly, Dr. McNew encouraged Klein to engage in a regular aerobic exercise, and we contend that that would be inconsistent with the restrictive opinion that Dr. Allen gave in June 2000. Didn't Dr. McNew suggest that she seek disability? That's absolutely true, Your Honor. However, as the ALJ points out, Dr. McNew's suggestion that Klein seek disability is inconsistent with all the findings that Dr. McNew had. When she actually examined Klein, Dr. McNew's findings were not consistent with that suggestion. The second physician, Dr. Campbell, found in June 2010 that Klein was independently ambulatory, and she had a full strength in her lower extremities. Now, after looking at another MRI in 2010 which showed only minimal facet joint effusions, Dr. Campbell did opine that no condition warranted surgical intervention. Importantly, the third physician in the relevant period, Dr. Randy Roberts, found in 2011 that Klein had a full range of motion in her thoracic and lumbar spines with no tenderness, that she had a full range of motion in her neck, her hips, and her shoulder, and that she was neurologically intact with no weakness. Now, we contend that these findings serve as the substantial evidence the ALJ cites to support his determination to afford little weight to Dr. Allen's opinion. Now, based on the entire record, the ALJ looked at the longitudinal evidence and determined properly that Dr. Allen's opinion was not supported by his own treatment notes, which showed no significant findings and no limitations. Again, Dr. Allen didn't limit Klein to, say, not doing X, Y, or Z or engaging in certain activities. His notes are silent. They actually show very minimal findings other than mention of back pain. The second reason is that the ALJ articulated to reject or to afford little weight to Dr. Allen's opinion is that the longitudinal evidence does not support, or rather, again, that Dr. Allen's opinion is inconsistent with the longitudinal evidence. So in sum, the ALJ did find substantial evidence to support, and we submit that substantial evidence does support the ALJ's determination to afford this opinion, Dr. Allen's opinion, little weight. As was discussed, the ALJ is tasked with looking at the record on the whole and weighing doctors' opinions. Consistent with the regulations and this court's precedent, the ALJ is entitled and is not to afford specific weight to physicians' opinion depending on many factors. Again, we submit that these two reasons that Dr. Allen articulated are sufficient to show what weight he did give to Dr. Allen's opinion. And again, I think it's important to note in closing that, again, not every diagnosis of fibromyalgia warrants a finding of disability. And again, the ALJ did credit the medical evidence and he did credit Klein's statements to some degree. He did limit her to a full range of light work, and he didn't say, for example, that she could go perform any job. Rather, the ALJ, after looking at the entire record on the whole, determined that Dr. Allen's opinion was not supported and instead found substantial evidence in the record. Rather, substantial evidence in the record supports the ALJ's determination to afford little weight to Dr. Allen's opinion and for the RFC generally. If there are no more questions, I thank the court for its time. Okay. Thank you, Mr. Clark. Mr. Wallace, I'll give you one minute. May it please the court, just two quick points on rebuttal. First, with respect to Dr. McNew's recommendation that she exercise, this court in Brosnahan v. Barnhart says that exercises undertaken as therapy are not necessarily an indication of what a person can do on a sustained basis. Second, with fibromyalgia. Yes, fibromyalgia is a disease that is not demonstrated by a lot of objective criteria. And I would submit that that's exactly the reason why the treating doctor is in a unique position to know why and how this disease limits, the extent to which this disease limits Ms. Klein. Dr. Allen was her treating doctor. He knows best about what her condition is, not the ALJ. Thank you, Your Honor. Okay. Thank you very much. Well, thank you both for your arguments, both in the briefs and in oral argument today. And thank you for being part of our test of video court. And with that, we will take the case under advisement and be back to you in due course. Thank you all. Court is in recess until 10 a.m.